Meakim *v.* Anderson.

---

## Meakim *vs.* Anderson.

In an action upon a promissory note, a total failure of the consideration of the note, or that it was given without consideration, may be proved on the trial, under the plea of the general issue, without notice.

The testimony of a witness on the trial, that some years previous he had received a letter from the plaintiff in the action ; that he had searched for it

Meakim v. Anderson.

among his file of letters and other papers, and in every other place where he could think it might be, and could not find it; that he did not think he had seen it since he received it, and that he believed it to be lost; is sufficient proof of loss to admit parol evidence of the contents of such letter.

It is in the discretion of the judge who tries the cause, to permit or refuse the re-examination of a witness who has been examined and cross-examined, and permitted to leave the stand; and the court, at the general term, will not review the exercise of his discretion.

And where the plaintiff wished to recall a witness, originally introduced by the defendant, that he might explain part of his testimony, on the ground that it had been misunderstood; and the judge stated that the witness had, both in his original and cross-examination, made the statement which he desired to explain, and that he did not think proper to permit such explanation when there was no doubt as to what the witness stated, and after a conference, by the witness, with the plaintiff's counsel, it was deemed a proper exercise of his discretion.

A general exception to the charge of the judge will be unavailing, where it is not perceived that any error of law is committed in the charge, and the whole dispute in the case is on a question of fact, and that is left to be determined by the jury.

Testimony to impeach a witness does not furnish ground for a new trial, when applied for upon an allegation of newly discovered evidence.

A new trial will not be granted to a plaintiff on the allegation that he was surprised, on the trial, by the evidence of a witness for the defendant, when it appears that he was informed by the defendant, before the suit was brought, that his defense would be the fact stated by the witness, and that he was also at the same time informed by the witness what the fact was; and his testimony on the trial corresponded with his previous statement to the plaintiff.

THIS was an action commenced May term, 1846, by the filing of a declaration pursuant to the statute, on a note to the plaintiff for $89 with interest, executed by the defendant Daniel M. Anderson as principal, and the defendant John Anderson as surety, payable eight months after date, and dated 20th April, 1842. The defendants severed in their defense, and each pleaded the general issue only, without any notice of special matter.

The cause was tried at the New-York circuit in March, 1848, before Justice Edwards and a jury. On the trial the plaintiff proved the execution of the note and the amount then due upon it, and rested. The defendant's counsel, in his opening, stated to the jury that his defense would be that the note sued on was

without any consideration, and that there was a total failure of consideration, and that the note in suit was given for a debt which had been paid, and which fact was not known to the defendants at the time the said note was given. The plaintiff's counsel objected to the introduction of such defense, on the ground that the pleadings furnished no notice of it, and no special notice of the same had been given. The objection was overruled by the court, and the plaintiff's counsel excepted. A witness, *Alpheus Dimmick*, was then sworn and examined on the part of the defendant, who testified that he resided at Bloomingburgh, Sullivan connty; that the body of the note offered in evidence was in his hand-writing; that he received a letter from the plaintiff at the time the note was drawn; that the plaintiff then resided on Long Island and the defendants at Bloomingburgh; that the letter was lost. On being examined by the plaintiff's counsel as to the loss of the letter, the witness said, " I have searched for it among my file of letters and other papers, and in every other place where I could think it might be, and can not find it. I do not think I have seen it since I received it. I believe it to be lost." The plaintiff's counsel then objected to the introduction of parol evidence of the contents of the letter, on the ground that no sufficient evidence of its loss had been furnished. The court overruled the objection and the plaintiff's counsel excepted. The witness then said, " The substance of the letter was, that I was to receive a note made by Daniel M. Anderson, with John Anderson as surety, and in doing I was authorized to discharge a mortgage of $150 given by Mary Thompson." The same witness further stated, that finding he had no authority to give a satisfaction, he drew the satisfaction piece and sent it to the plaintiff by mail to have it acknowledged at his residence, and it was returned to the witness by mail, and he then procured it to be put on record, and took the note in question. He also stated that Mary Thompson was married to Daniel M. Anderson, one of the makers of the note, before the note was given. Another witness of the defendants, *Jacob C. Thompson*, testified to many interviews between Mary Thompson and the plaintiff; one in the fall of 1834, when the

witness made some settlement upon a note she, Mary Thompson, had given the plaintiff, to the amount of somewhere about $100; and he was also present at an interview between them at Bushwick, a couple of years afterwards, perhaps, and then made a settlement between Mary Thompson and the plaintiff; calculated the interest on some indorsements which had been made on a former note, and a new note signed by Mary Thompson was given for the balance.   She said that if Samuel Thompson had paid the plaintiff so much money, she would not have owed the plaintiff any thing; plaintiff said Samuel had not paid him; she was much grieved and mortified because Samuel had not paid over the money to the plaintiff, and shed tears.   Witness did not know how much money she said she had given to Samuel Thompson; he presumed that the new note which he drew, as above stated, was not for $100, but it was over $80.   This was the last interview before Mary Thompson died.   There were some little accounts between her and the plaintiff besides the note; the plaintiff had from time to time lent her money, and she paid him in different ways, in produce, such as butter, cows, &c.   Samuel Thompson was then called, and being sworn, said: Mary Thompson gave him some money to take to the plaintiff thirteen or fourteen years ago (the then) last December; the amount was over $90, to pay off a note which she said the plaintiff held against her; he paid it to the plaintiff, he thinks it was thirteen years ago that month (of the trial); this witness said he never saw Mary Thompson after that, nor was ever up where she lived until after her death.   He first saw the defendants two years ago (the then) last January, and told them he had paid the money to the plaintiff.   On his cross-examination, the witness said: he carried the money from Mary, she did not give him all money, $30 in gold, and a note drawn in her favor by Mr. Beyea, for about $60.   He made the payment to the plaintiff by giving him three cows and a horse; it was in Flushing, Long Island; he sold the cows and exchanged horses, and the plaintiff gave him $120 boot, and took a wind mill; the witness did not recollect what amount of cash was given at that time; this was in March, about the 20th, he did not see the note at

that time, he saw the note before that, there was no receipt taken by the witness; the plaintiff said he would cast it up, and settle with the witness' sister, when she came down; she never inquired of the witness whether he had paid that money, nor ever wrote to him to inquire; she lived in Bloomingburgh, Sullivan county, and he resided in Flushing. It also appeared in evidence, that at the time the note in suit was given, (April 20, 1842,) Mary Thompson (then the wife of the defendant Daniel M. Anderson,) was living, and that she died in the autumn ensuing; that she obtained sums of money, from the plaintiff at different times, from 1833 to 1839, or 1840. The plaintiff's counsel then offered to recall Jacob C. Thompson, a witness for the defense, for the purpose of enabling that witness to explain a material part of his testimony; the counsel stating that the witness' testimony on the point in question had been misunderstood, and taken to convey a meaning which the witness had not intended. The court then asked the counsel as to what fact he wished to examine the witness, and the counsel having stated the fact, the court remarked, that there could be no misunderstanding as to what the witness had stated, for he had sworn positively to the fact, both in his direct and cross-examination, and that the court could not permit a witness who had thus sworn to be recalled, at the request of a party, to contradict his positive statement after he had been conferred with by the counsel for the party wishing to recall him. To this decision the counsel for the plaintiff excepted; the parties rested, and the judge charged the jury that the action was brought on a note, the defense was want of consideration; that proof of the signatures was sufficient to establish the plaintiff's case, unless there was evidence of want of consideration; in this case the note in question was given for a balance alledged to be due on an old mortgage, Mr. Dimmick [the first witness for the defense] stated that he procured a satisfaction piece of the mortgage from the plaintiff, and took the note in satisfaction of the mortgage, and there was no evidence to the contrary that if the amount was due on the mortgage it was a good consideration. That Jacob Thompson testified, that at a settlement in Bushwick,

when a note was given by Mary Thompson, she said that if Samuel Thompson had paid the plaintiff the money she gave him, she would not owe him [the plaintiff,] and that the plaintiff said the money had not been paid, and that she seemed to be much mortified that it had not been paid.   It was claimed by the defendants that if this had been paid, there was nothing due on the mortgage, and the consideration failed.   The object of the plaintiff was to show that there were other transactions.   It was claimed by the plaintiff that he never had received the money. If it was a fact, that at that settlement at Bushwick, the money alledged by Samuel Thompson to have been paid to the plaintiff was not credited to Mary, and the jury believed his testimony, then it was for the jury to say whether, in connection with the other testimony, there was evidence of a failure of consideration for the note or not.   The whole matter was a question of fact, and was all within the peculiar province of the jury to determine.   The plaintiff's counsel requested the judge to charge as matter of law, that, conceding the payment to have been made by Samuel Thompson, as testified to by him, (which fact of payment the plaintiff denied,) if a further advance of money was made by the plaintiff to Mary Thompson, when she gave the note at the Bushwick settlement, and that note was exchanged for the note now in suit, such further advance afforded a consideration for the latter note, which the jury were not at liberty to disregard, and in such case the evidence offered by the defendants proved, at most, only a partial failure of consideration, which the defendants were not at liberty to go into, without giving notice of it with their plea.   The judge told the jury, that if the money was paid, as testified to by Samuel W. Thompson, and no credit was given; and if the jury believed that the payment was larger in amount than the amount due to the plaintiff, at the time the note in suit was given, the plaintiff could not recover, unless there was some other consideration; and that it was for the jury to say whether there was any such consideration.   To this, and to every part of the charge, the plaintiff's counsel excepted.   The jury rendered a verdict for the defend-

Meakim *v.* Anderson.

ants, and the plaintiff's counsel had leave to make a case, with liberty to turn it into a bill of exceptions.

On the case so made, the plaintiff moved to set aside the verdict in favor of the defendants on the ground of misdirection of the judge at the trial; and also moved, on affidavits, for a new trial on the ground of newly discovered evidence, and surprise on the trial, by the evidence of Samuel W. Thompson. The affidavits were of Hugh T. Meakim, son of the plaintiff, and of Nancy Bcdell, daughter of the plaintiff, and an affidavit of the plaintiff himself. The affidavits of the son and daughter, were in contradiction of the statement of Samuel W. Thompson, that he had not seen his sister, Mary Thompson, since March, 1835, the time when he stated he had paid the money to the plaintiff; and affirming that he had repeatedly seen his sister at the house of their father, the plaintiff, in Newtown, in the months of May and June, 1836, and also at his house in Bushwick, in the year 1838. The plaintiff himself also made an affidavit, that he was surprised, on the trial of the cause, by the evidence of Samuel W. Thompson; and that he was not at that time aware of the existence of the newly discovered evidence set forth in the preceding affidavits, (his son's and daughter's.) The defendant, Daniel M. Anderson, made a counter-affidavit, stating that some time early in the year 1846, Samuel W. Thompson, one of the witnesses in this case, was on a visit at the defendant's residence, in Mamakating, Sullivan county, and then informed the defendant that he had paid to the plaintiff the money which Mary Thompson, his sister, had given him for the plaintiff, (and as was by him, sworn to on the trial of the cause;) that this was the first intimation that he, Anderson, had of this payment; that soon after that, and during that winter, he went to the plaintiff's residence on Long Island, and told him the whole statement as made by the said Samuel Thompson; and which was the same, too, as that made by Samuel, under oath, on the trial of the cause. The defendant also stated in his affidavit that in the month of March, 1847, he again told the plaintiff the same statement of Samuel, and the next day, they all three, the plaintiff, the said Samuel

W. Thompson, and the defendant Daniel M. Anderson, had an interview in the city of New York, and that Samuel then told the plaintiff, that he, Samuel, had paid him, the plaintiff, the money which his sister, Mary Thompson, had given him for the plaintiff, and detailed to the plaintiff the time and manner in which he, Samuel, had paid it to him. That at that interview the defendant told Samuel that his sister Mary had died in the belief that he, Samuel, had never paid this money to the plaintiff, and Samuel seemed much affected, and insisted upon it, that he had paid it to the plaintiff, and that he, plaintiff, knew it. The defendant also swore to other interviews with the plaintiff, before the trial, in which the matter of Samuel W. Thompson's statement, as aforesaid, and the said note was fully talked over. He also stated in his affidavit, that Hugh T. Meakim had always lived with his father, the plaintiff, until about the spring of 1849 ; and that Nancy Bedell, at the time of the trial, and for some two years before, lived near, and about one-quarter of a mile distant from the plaintiff.

*W. S. Rowland,* for the plaintiff.

*Geo S. Stitt,* for the defendant.

*By the Court,* KING, J. Two motions are made on behalf of the plaintiff—a motion to set aside a verdict in favor of the defendants, the cause having been tried at the circuit in March, 1848—for alledged misdirection of the judge at the trial; and also, a motion for a new trial, on the ground of newly discovered evidence.

The first exception taken by the plaintiff's counsel was, that the judge permitted the introduction of evidence to show a total failure of consideration of the note on which the action was brought, the defendant having pleaded the general issue, and given no notice of this defense. The exception was not properly taken, it being well established that a total failure of the consideration of a note, or that it was given without consideration, may be proved under the general issue, without notice. (*Payne* v. *Cutler,* 13 *Wend.* 605.)

Meakim v. Anderson.

The second exception was, that parol evidence of the contents of a letter had been admitted, without sufficient proof of the loss of the letter. It seems to us that the proof of loss was sufficient, and that the exception was properly overruled.

The third exception was to the judge's refusal to recall, upon application by the plaintiff, a witness originally introduced by the defense to explain part of his testimony, on the ground that it had been misunderstood. The witness had been examined and cross-examined, and permitted to leave the stand; and had subsequently conversed with the plaintiff's counsel. The judge stated that the witness had, both in his original and cross-examination, made the statement which he desired to explain, and that he did not think proper to permit such explanation, when there was no doubt as to what the witness stated, and after a conference with the plaintiff's counsel. It was in the discretion of the judge to permit, or refuse, the re-examination; the discretion seems to have been properly exercised, and the exception should be overruled on that score, even if we could now review the exercise of his discretion. (*People* v. *Rector*, 19 *Wend.* 578. *Law* v. *Merrills*, 6 *Id.* 281.)

The fourth exception is a general one to the charge of the judge. We do not, however, perceive that any error of law was committed in the charge. The whole dispute in the case was on a question of fact, and that was left to be determined by the jury.

As to the motion for a new trial, on the ground of newly discovered evidence and surprise; it appears from the affidavits in opposition to the motion, that the plaintiff, before the trial, was aware that Samuel W. Thompson claimed to have paid him the money which his sister Mary had given him to pay the plaintiff; and that he had never seen his sister after such payment. This does away with the plaintiff's statement, that he was surprised by this evidence. The testimony which he claims to have discovered since the trial, is that of his own son and daughter, and only tends to impeach Samuel Thompson's statement, that he had never seen his sister, after his paying the money to the plaintiff. It is testimony, therefore, to impeach the witness, and such testimony does

not furnish the ground for a new trial. Nor is any sufficient excuse shown why it was not adduced at the trial, the plaintiff having been apprised of the necessity of rebutting Samuel W. Thompson's testimony, if he could do so.

The motion to set aside the verdict must, therefore, be denied, with costs.

And the motion for a new trial, on the ground of surprise, &c. must be denied with $10 costs.

[NEW-YORK GENERAL TERM, June 14, 1851. *Edwards, Edmonds* and *King*, Justices.]