DANIEL C. MOORE, Administrator of Robert Henderson, plaintiff in error, vs. FRANCIS ULM, defendant in error.

[1.] By section 3640 of the Code it is provided that a new trial may be granted in all cases, when any material evidence—not merely cumulative in its character—but relating to new and material facts, shall be discovered by the applicant after the rendition of a verdict against him, and shall be brought to the notice of the Court within the time now allowed by law—*Query:* If the newly discovered evidence is material—not merely cumulative, but relating to new and material facts—has been discovered by the applicant since the rendition of the verdict against him, and has been brought to the notice of the Court within the time now allowed by law for entering a motion for a new trial, can any other fact be required by the Court of the applicant?

[2.] In extraordinary cases, to be judged of by the Court in its discretion, a motion for a new trial may be amended so as to include a ground that has arisen since the making of the original motion.

This was an action of ejectment by Henderson, the intestate of the plaintiff in error, against Ulm, the defendant in error.

It was tried before Judge Thomas, at October term, 1859, when the *locus in quo* and the posssession of defendant at the commencement of the suit being made out, the plaintiff

showed a chain of title down to himself, beginning with a grant from the State to one John Jordan, dated in 1818.

The defendant read in evidence a grant from the State to one William Graves, covering the same premises, and dated in 1789. He then sought to show, that by a judicial sale title passed out of Graves, in the year 1800, into one Seaborn Jones. For this purpose, he offered in evidence a judgment against Graves, rendered by the Circuit Court of the United States for the District of Georgia, in 1799, and with it a deed, in the usual form of a sheriff's deed, made by the Deputy Marshal of Georgia to Jones, and bearing date in 1800. The Court rejected both these documents.

By the exemplification of the judgment tendered, no entry of service upon Graves, or acknowledgment of service, appeared; but it did appear that the judgment was confessed by him in open Court.

After the rejection of the exemplification for the purpose above mentioned, the defendant again offered it, to prove that Graves was in life in 1799; but the Court ruled it out for this purpose, also.

The jury found for the plaintiff; and the defendant moved for a new trial, because of the rejection of his evidence, and because the verdict was without evidence to support it, and contrary to the weight of the evidence.

At October term, 1862, the motion being still pending in Court, the defendant amended it by adding, as another ground, the discovery of new and material evidence. The affidavits to support this ground were those of Lewis Crook, Elisha Weathers, the defendant himself, and his counsel, Wm. M. Reese.

*Crook's* affidavit, sworn to December 23d, 1859, stated that he was then about seventy-six years of age; that from the time he was about thirteen till he was about sixteen years old he knew William Graves, then in life, and sometimes called Mountain Graves; and that the little mountain was named for him.

*Reese's* affidavit, sworn to November 16th, 1859, stated

that about the 9th of that month he accidentally met a man who directed him to Crook; that he did not know, before the trial, of Crook's testimony, or of a single person by whom the same facts could be proven; that he inquired·before the trial, in all places where he thought the facts might be proven, for testimony to prove them, but failed.

*Weathers's* affidavit, sworn to October 22d, 1860, stated that he was then seventy-six years old, and removed with his father from South Carolina to Lincoln county, in 1797; that for a year or two after that period he frequently saw and heard of William Graves, called Mountain Graves, who had a store, was a speculator in lands, and frequently took up lands; and that he, Graves, went away from Lincoln county, and deponent knew not what became of him.

*Defendant*, himself, made two affidavits. The first, sworn to November 16th, 1859, stated that Crook's testimony came to his knowledge after the trial, and was first heard of from his counsel on the 14th of that month; that he did not know before or during the trial that the same facts could be proven by any one; that he often inquired, but could find no person that could inform him at all about Graves, or what became of him; and that all his inquiries resulted only in the information that Graves once lived about the mountain, but not at any particular time. The second, sworn to October 22d, 1860, made similar statements as to diligence, and declared the non-discovery of Weathers's testimony until that day.

The plaintiff met this showing with the affidavits of several citizens of Lincoln county, which proved that both Weathers and Crook had, during the last seven years preceding October, 1862, been known in the county as aged men, and had often been at Lincolnton, and other public places, on public days; that Weathers, during that period, lived in the county, about two and a half miles from defendant's residence; that Crook lived in Wilkes, near the Lincoln line, and near Graves's mountain, five or six miles from Lincolnton, and ten or twelve miles from defendant, and was well known at Lincolnton as a vender of sleys.

By consent of parties, the motion for a new trial was referred to Judge Harris for decision, at Chambers; who sustained it, granting a new trial on the ground of the newly discovered evidence.

This is the judgment now complained of.

AKERMAN, for plaintiff in error.

BARNETT & BLECKLEY, for defendant.

LUMPKIN, C. J.

Concurring, as we do, with Judge Harris, as to the newly discovered evidence, we adopt his opinion as our own, upon that ground.

A grave question is presented by counsel for the plaintiff in error, in the argument of this case, viz, as to the right of amending the motion for a new trial. It is insisted that it cannot be so amended as to include matter that has arisen since the making of the original motion. Application may be made for a new trial *in extraordinary* cases, after the term at which the trial was had. *Code, section* 3643. So we infer that new grounds may be inserted, which originated subsequently to the term at which the trial took place, and after the original application for a new trial was made. This provision was adopted, no doubt, to save the necessity for filing a *bill* for a new trial, as heretofore practiced in such cases.

Let the judgment be affirmed.

"The death of Judge Thomas W. Thomas, before whom the above stated case was tried, and the connection of Judge Reese with it as counsel for the defendant upon the trial, have, together, led the present counsel of both plaintiff and defendant to refer the motion for a new trial to me for decision.

"There are several grounds in the motion for new trial

upon which I deem it unnecessary to express any definite opinion. They have been, in the briefs submitted, argued with plausibility by defendant's counsel; but they have failed to convince me that I should disturb the rulings of Judge Thomas.

" Another ground is presented by the motion, upon which this application can be more satisfactorily disposed of. It is that of newly discovered testimony. This ground is not a favorite with courts. *Interest reipublicæ ut finis sit litium,* is a legal maxim, and full of wisdom. If adhered to in all cases, it would produce great injustice. No one is more sensible than myself of the manifold evils which would ensue, from lending a ready ear to applications made by unsuccessful suitors. But as the principles regulating the practice of courts in granting or refusing new trials upon this ground, have been reduced to definite form, and fixed by repeated adjudications, the task of applying the facts to these established principles is the only one imposed on me.

" The principles referred to are:

1. That the testimony is new—was not used on the trial, but has been subsequently discovered.

2. That it would be material in determining the point in issue, or that it probably would produce a different result.

3. That sufficient evidence accompanies the application for new trial, of diligence, *previous* to the trial, to procure testimony to the point involved.

4. That the new testimony is not merely *cumulative.*

"I apprehend it will be readily conceded, that the testimony of Weathers and Crook, who were not sworn on the trial, is *new*; the affidavits show that it was discovered since the trial. The materiality of it is unquestionable. If true, it destroys the presumption of the death of Graves seven years before the escheat act of Georgia of 1801; as also the other presumption, that he had abandoned his rights under the grant of 1789, to the land in controversy. That land was, upon common law principles, which existed up to the act of 1801, by presumption deemed to have escheated and

re-vested in the State.   It is not pretended that it was eschea-
ted under the act of 1801.   Remove the presumption of the
death of Graves, or of his abandonment of his title to the
land, by showing him to be in existence within the seven
years immediately preceding the act of 1801, (and the tes-
timony claimed to be newly discovered will show Graves
to be in life in Lincoln in 1798 and 1799) and the inevitable
conclusion must be, that the land which passed out of the
State of Georgia by her grant in 1789, never re-vested
legally in her, so as to admit of its being re-granted.

"Was the diligence exercised previously to the trial, by the
defendant and his attorney at law, to procure evidence of the
existence of Graves and his whereabouts, up to 1800 and
1801, sufficient?   The affidavit of Judge Reese is very full.
He alleges that he inquired in all the places he could think
of, previous to the trial, and that he did not know of a
single person by whom he could prove Graves was alive
about 1800 or 1801.   It is urged by plaintiff's counsel that
the affidavits are defective because they do not specify, either
the names of the places or neighborhood searched, or of the
persons inquired of.   I know of no rule of practice so strin-
gent, I am unwilling, in this case, to require so much.   The
fact that Mr. Reese was an attorney and counsellor of emi-
nence, a gentleman of great industry, conducting the defence
of Ulm, and knowing full well what testimony was necessary
to defeat the adversary claim, must be presumed to have
made, intelligently, his inquiries for testimony, at such places
and of such persons as common sense would suggest.   I can
not feel the force of the suggestion, that the age of Withers
necessarily pointed him out as a person of whom inquiries
should have been made by Ulm or Mr. Reese.   His affidavit
shows that he removed from South Carolina to Georgia in
1797.   He was then about thirteen years old.   The land in
dispute had been granted about eighteen years before, and
the mountain named, or called, probably, very soon after-
wards by the name of the grantee.   These circumstances,
most probably, were unknown or unheeded, or made so slight

an impression upon a young mind, that he ceased to keep watch upon the movements of Graves, very likely, as Graves removed from Lincoln in 1799. Besides, this witness is very illiterate, not being able to write his name. Putting all the facts together, it is hard to perceive what would have induced any one to go to *him* in search of the desired knowledge. The reasons here stated should exempt Ulm from any imputation of negligence in not inquiring of Weathers before the trial as to the existence of Graves, though living within a few miles of each other.

" I can not think that the age of Crook, either, necessarily should have led the defendant or his counsel to go to him as ' an aged person,' to make inquiries. His simple occupation, but a common one in his day, his casual visits to Lincolnton, and the distance of his residence from Ulm, all unite in excusing Ulm from looking for testimony in that direction.

" More diligence than is exhibited by the affidavits accompanying the motion for new trial, I am impressed, is not required by the principles of the common law.

" The last requisite is, that the testimony called newly discovered should not be *merely* cumulative. The term cumulative will be found, upon examination, not to be understood alike by all Courts. If it means no more than what Chief Justice Savage, in 10*th Wendall's Repts.*, says, that it is "*additional* evidence to support the same point, and which is of the same character with evidence already in the case," then, it appears to me, that the proposed newly discovered testimony can not, with propriety, be said to be cumulative. The brief of testimony before me discloses not a question put or answer given as to the existence of Graves. I ¦make this assertion, putting out of view the exemplification of the suit in the Circuit Court and the confession of judgment, as it was repelled. There was no proof by plaintiff, whatever, as to the death of Graves prior to 1801, nor of the 'abandonment of the possession of the land or of his claim of title. How can it be said, then, this testimony, in any view, is

cumulative? To what is it additional? What evidence is there in the brief of the same character of that proposed?

"I have examined the case in 26 *Ga.*, *of Vickery vs. Benson:* in one respect it differs from this. The plaintiff, in that, after Benson had made his defence, introduced testimony to prove that they, the witnesses, did not know, nor had ever heard, of Lamentation Braswell, the first grantee of the State to the land in dispute. In this case, no such testimony was adduced. I will not decide that some such testimony was necessary, as I grant the new trial upon a distinct ground; but I grant it the more readily, from the absence of all proof by plaintiff of the death of Graves, or his abandonment of possession.

" Let the rule for a new trial be made absolute."