## FRANK GIBBS *v.* THE STATE.

1. CHARGE OF THE COURT—REASONABLE DOUBT.—Accused asked the court to instruct the jury that, "if the evidence of an *alibi* has introduced into the minds of the jury a doubt whether or not the accused was at or about the place when the alleged robbery is said to have been committed, you will acquit him." *Held*, that the instruction was properly refused. The doubt justifying an acquittal must be a *reasonable* doubt, and the court below sufficiently charged the jury on the point.

2. CHARGE OF THE COURT.—In all felony causes it is the duty of the district judges to deliver written charges to the jury. In such charges the law applicable to the facts in proof should be set forth, but the evidence must not be summed up. Brevity is commended, to avoid the error of charging on the weight of evidence, or of confusing the minds of jurors.

3. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.—Motions for new trial, based on evidence newly discovered, but tending to impeach the testimony of a witness sworn on the trial, are not favored by the courts. The general rule against allowance of such motions, though subject to exceptions, applies with equal stringency to criminal as to civil causes.

APPEAL from the Criminal District Court of Galveston. Tried below before the Hon. GUSTAVE COOK.

All material facts are clearly stated in the opinion of the court.

*Walton, Green & Hill*, for the appellant.

*H. H. Boone*, Attorney General, for the State.

Ector, Presiding Judge. The appellant, Frank Gibbs, was indicted in the criminal district court of Galveston county, at the March term, 1876, charged with robbery from the person of one Young Watson. The indictment was in accordance with the rules of pleading, and followed the approved common law forms of indictments for robbery. It gave the name of the owner, description and value of the property taken, the manner of taking, as well as the name of the person from whom taken, and when and where taken; and there is no objection to it by appellant, as shown by the record. The appellant was put upon his trial, which resulted in the jury returning the following verdict: "We, the jury, find the defendant guilty, and assess his punishment at three years in the penitentiary."

The defendant asked the following charge, which was refused by the court: " If the evidence of an *alibi* has introduced into the minds of the jury a doubt as to whether or not the defendant was at or about the place when the alleged robbery is said to have been committed, you will acquit the defendant." It will be seen the word " reasonable" is left out of the charge asked. The appellant filed a motion for a new trial, setting forth: 1st. That the verdict is contrary to, and unsupported by, the evidence. 2d. That the court erred in not giving the charge asked by the defendant's counsel. 3d. That the charge given by the court was too general. 4th. For newly-discovered evidence, which, in his affidavit, he stated was material to his defense, and which he could not procure on his trial because he did not know of it. With his motion he filed, also, the affidavit of one W. W. Stevenson, in which he, Stevenson, states

that, on the Wednesday succeeding the Saturday night upon which Gibbs is alleged to have robbed Young Watson, he, Watson, stated (to him, Stevenson) that he was drunk, and could not state whether or not it was Frank Gibbs that robbed him, but only suspected him because they had been drinking together; that he communicated this conversation to Andrew Harrison, Henry James, and James Johnson.

Appellant also filed, as a part of his motion, the affidavit of Andrew Harrison and James Johnson, in which they state that W. W. Stevenson told them that Young Watson had told him (the said Stevenson) that he, Watson, did not know whether Frank Gibbs had robbed him or not; that he only suspected that it was Frank Gibbs because he, the said Watson, and Gibbs had been drinking together during the day; that he, the said Young Watson, was drunk, and did not know who robbed him.

The appellant also filed his motion in arrest of judgment, setting forth the following reasons: "1st. That the verdict of the jury herein rendered is not responsive to the issue. 2d. That it does not show that the defendant has been found guilty of any crime known to the laws of Texas." The motions for new trial and in arrest of judgment were overruled, to which appellant excepted, and gave notice of appeal. Judgment in the case was entered in accordance with the finding of the jury. The following are the errors assigned:

1st. The court erred in overruling the defendant's motion in arrest of judgment.

2d. The court erred in overruling the defendant's motion for a new trial.

It is necessary that we should give a part of the testimony, for a proper understanding of this case, and the opinion of the court. Young Watson, first witness for the state, testified that during the afternoon of the 8th of March, 1876, in the city and county of Galveston, he was in company with the accused, Frank Gibbs, on Market street in

said city; took several drinks with the accused and others; late in the evening went with the accused into a gambling saloon on Market street. Accused had tried to borrow money from witness during the evening, which was refused on the plea that he had none. In the saloon another party, Jake Massie, applied to witness to borrow money; witness advanced him $1.50; took his money from his pocket to make the change; does not know whether accused saw the money. That later in the evening, about dark, he went with the accused to the grocery of Isaac Green, on Thirtieth and Broadway; there bought liquors and sardines, and drank and ate with accused until between half-past six and seven o'clock, P. M.; left said grocery with accused, who said he was going home. After going several blocks they separated, accused stating he was going home. The moon was then shining brightly, and the gas-lamps were lighted. Witness had proceeded alone about a block and a half when he heard some one approaching him from behind, but did not recognize the party. Very soon he heard some one else approaching from behind, and, upon looking around, saw the accused; felt glad, and spoke to him; that the accused, Gibbs, made no reply, but immediately seized witness around the arms and shoulders, and violently threw him down, and forcibly took from witness his pocket-book, containing about $110, and immediately made off with it—witness in the meantime hallooing murder. This occurred about half-past six or seven o'clock in the evening. He further said: "I saw Frank Gibbs distinctly, and spoke to him; I was badly frightened, and thought at first he was going to kill me." Witness then described the money taken from him as being of the kind, description, and value alleged in the indictment; and he says: "I hallooed 'murder' because I was frightened, and Sheriff Atkins came up to me, and I told him I had been robbed; that Frank Gibbs had knocked me down and robbed me of $100;

that this occurrence took place in the city and county of Galveston, and in the state of Texas.''

Jake Massie, next witness, corroborated substantially everything that witness Watson said about lending him the money; that Watson loaned him $1; saw Watson have a roll of money; that Watson told him the accused had tried to borrow money from him that evening; that Watson did not, and does not, gamble, and was sober when he parted with him after night.

Sheriff Joseph Atkins testified '' that on the evening of the 8th of March, in the city of Galveston, between seven and eight o'clock, I (being sheriff at the time) heard the cry of ' murder,' and ran out to where Young Watson was. When I got to him he, Watson, told me that Frank Gibbs had robbed him of $100. It was light enough to see two or three blocks, but not enough to identify one at that distance. I saw several men running from the scene. I ran after them some distance, but could not catch them. It was quite light. I saw Young Watson then; had never seen him before, and recognize him now as the man who cried murder. I know it was between seven and eight o'clock when this occurrence happened '' (and gave his reasons for knowing the time). He also stated: '' Watson was greatly excited; asked him if he was drunk, on account of it. He answered soberly, and I thought him excited, not drunk.''

The keepers of the saloons named by witness Watson, in his evidence, also substantially corroborated his testimony as to what occurred in their houses.

Mary Moss and Louisa Johnson were the only witnesses introduced by the appellant on the trial. They stated, in substance, that they lived together, nearly a mile from the place where the alleged robbery is said to have taken place; that they saw the accused on the evening of the alleged robbery; that he had once boarded with them; that he

came to their house between half-past six and seven o'clock; think it was about half-past six o'clock. They gave their reason why they knew the time of night when he came. That he sat up with them and talked till half-past ten o'clock, and went to bed there; he did not leave the house from the time of arrival until he went to bed, and that he was there the next morning.

The only charge asked by the appellant was not the law, and was properly refused by the judge presiding at the trial. The only doubt that would authorize a jury to acquit is a reasonable doubt. The court charged the law in regard to " reasonable doubts." The following is the charge given on that subject: " The defendant is presumed to be innocent until his guilt is established by the evidence, to the satisfaction of the jury, beyond a reasonable doubt; and, unless you are so satisfied, you should acquit him. If there is a reasonable doubt that a robbery, as charged and defined, was committed upon the man Young Watson, or that the defendant, was there, or is the man that did it, you should acquit him."

The 1st error assigned by the counsel for appellant is. that the court erred in overruling the appellant's motion in arrest of judgment. Was the verdict of the jury responsive to the issue, and does the same show that the defendant has. been found guilty of any offense known to the laws of Texas?'

Both of these questions we answer in the affirmative.

The 2d error assigned is that the court erred in overruling the defendant's motion for a new trial. Was the verdict contrary to the law and the evidence? There was certainly sufficient evidence to support the finding of the jury. There was some conflict in the evidence. The appellant attempted to prove an *alibi*. The jury had the witnesses before them. It was their duty to reconcile the testimony of the different witnesses if they could; if they could not, then to give the testimony of the witnesses the credit they believed it deserved.

The testimony of the witness Watson was remarkably clear. He was corroborated in the main by all the other state witnesses. Watson knew and identified the appellant as the party that robbed him. The evidence of the two women was entirely irreconcilable with the testimony of the other witnesses; and, fully believing that there was a great preponderance of the evidence against the appellant, we are satisfied that the court below did right in not granting a new trial on this ground.

3d. Was the charge of the court too general?

It is the duty of the judge, in all cases of this kind, to deliver to the jury a written charge, in which he shall distinctly set forth the law applicable to the case; but he should not sum up the evidence. It is necessary to give the law applicable to the facts testified to by the witnesses. The charge of the court in this case was not too long, as charges often are. In the extreme anxiety of district judges to help juries to come to a proper conclusion, they sometimes commit the error of charging on the weight of evidence, without intending it, and of confusing juries by the length of their instructions. Instead of educating a jury in the general principles of the law by delivering lengthy charges, copied extensively from the Code and from standard elementary writers, our supreme court has wisely said that judges often confuse juries. A judge should labor to condense his charge as much as possible, and instruct the jury as to the law applicable to the state of facts in evidence; he should not assume facts which it is the particular province of the jury to find, and should be careful so to frame it as not to lead the jury to infer what is the opinion of the case by the court. We think the charge in this case properly instructed the jury as to the law.

And, lastly, did the court err in refusing to grant a new trial on account of the newly-discovered evidence?

There are certain general principles which the courts have

established, and which may be regarded as settled law, relative to these applications for new trials on the ground of newly-discovered evidence. One is that a new trial will not be granted, on the ground of newly-discovered evidence, to impeach a witness sworn on the former trial; and this rule is applied with equal stringency, with us, to criminal as to civil cases. At common law it was applied with more stringency to criminal than to civil cases. This ground for new trial is not a favorite with courts. Every man of common sense and observation must be sensible of the manifest evil and danger which would ensue from lending a ready ear to such applications made by unsuccessful suitors. *Dansby* v. *The State*, 34 Texas, 392; *Scranton* v. *Tilley*, 16 Texas, 193; 7 Barb. 271; 11 Barb. 215; *Bland* v. *State*, 2 Carter, 608; *Moore* v. *Ulm*, 34 Ga. 569; Gra. & Wat. on New Trials, 1079, and cases there cited. There are, doubtless, exceptions to this rule, but the present case should not be one of them.

The judgment of the court below is affirmed.

*Affirmed.*